IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AZMI TAKIEDINE, | : | |
| *Plaintiff* | : | CIVIL ACTION |
| v. | : | |
| | : | |
| 7-ELEVEN, INC, | : | No. 17-4518 |
| *Defendant* | : | |

## MEMORANDUM

PRATTER, J.                                                                                   SEPTEMBER 2, 2020

      Azmi Takiedine asks the Court to reconsider its granting of 7-Eleven, Inc.'s motion for summary judgment. He also seeks leave to file a second amended complaint. 7-Eleven opposes the motions.

      For the reasons that follow, the Court denies both of Mr. Takiedine's motions.

### BACKGROUND AND PROCEDURAL HISTORY

      Former 7-Eleven franchisee Azmi Takiedine initially filed a complaint against 7-Eleven alleging breach of the covenant of good faith and fair dealing and breach of contract. The Court dismissed Mr. Takiedine's complaint, but with leave to amend. In his amended complaint, Mr. Takiedine pleaded claims for breach of the covenant of good faith and fair dealing, breach of contract, unconscionability, unjust enrichment, impracticability, conversion, and fraud. 7-Eleven moved to dismiss the amended complaint and filed a separate motion to stay arbitrable claims, arguing that some of Mr. Takiedine's breach of contract claims concerning vendor negotiating practices must be arbitrated under the terms of the Franchise Agreements.

      After holding oral argument on the motions, the Court granted 7-Eleven's motion to stay arbitrable claims, ruling that Mr. Takiedine's vendor negotiating practices claims under Section 15 of the Franchise Agreements, including those concerning 7-Eleven's proprietary products, fell within the scope of the Franchise Agreements' arbitration provision. The Court also dismissed

1

three of Mr. Takiedine's breach of contract claims concerning (1) fair and accurate merchandise audits under Section 14 of the Franchise Agreements; (2) failure to market and advertise under Section 22; and (3) recommended vendors under Section 15(g). Three of Mr. Takiedine's breach of contract claims survived, namely, those relating to (1) failure to provide necessary maintenance under Section 20(d); (2) failure to treat Mr. Takiedine as an independent contractor under Section 2; and (3) no written notice of credit card fees and the increase of said fees under Section 7 of the Credit Card Amendment to the Franchise Agreements. Mr. Takiedine's breach of the covenant of good faith and fair dealing claim, as well as the impracticability, unconscionability, and fraud claims, were dismissed. The parties subsequently stipulated to the dismissal of Mr. Takiedine's conversion claim and his breach of contract claims related to credit card and advertising fees.

7-Eleven then moved for summary judgment on Mr. Takiedine's remaining claims.[1] Following oral argument, the Court granted the motion in its entirety. In dismissing Mr. Takiedine's independent contractor claim, the Court held that Section 2 of the Franchise Agreements did not impose a duty on 7-Eleven, and even if such a duty did exist, Section 2 did not prohibit 7-Eleven from requiring Mr. Takiedine to stock and sell certain products or from interacting with Mr. Takiedine's employees, both of which matters were the gravamen of his claims. The Court also held that 7-Eleven could not be liable for failing to provide necessary maintenance under Section 20(d) because, under Pennsylvania law, the standards of good faith and fair dealing apply to franchise relationships only in the context of termination of the agreement, and there was no allegation by Mr. Takiedine that 7-Eleven had failed to make repairs it deemed subjectively (as it contractually was permitted to do so) necessary as required by the Franchise Agreements.

---

[1] Mr. Takiedine agreed to the dismissal of his unjust enrichment claim in his response to the summary judgment motion.

Mr. Takiedine now asks the Court to reconsider its decision granting 7-Eleven's motion for summary judgment.[2] He also seeks leave to file a second amended complaint. 7-Eleven opposes the motions, arguing the Court did not err and Mr. Takiedine's proposed second amended complaint is futile and the result of undue delay to bring this dispute to a close.

## LEGAL STANDARD

To succeed on a motion for reconsideration under Federal Rule of Civil Procedure 59(e), the moving party "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law [or fact] or prevent manifest injustice." *Lazaridis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010) (per curiam); *accord Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Although Rule 60(b)(6) permits a court to also "grant relief from a final judgment for 'any other reason that justifies relief,'" courts have adopted a qualitative expectation that a party seeking Rule 60(b)(6) relief "demonstrate the existence of 'extraordinary circumstances' that justify reopening the judgment." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (citations omitted).

Where a party has moved for both reconsideration of a final judgment and leave to amend the complaint, "a court will normally conjoin the . . . motions to decide them simultaneously, as it 'would be a needless formality for the court to grant the motion to reopen the judgment only to deny the motion for leave to amend.'" *Ahmed v. Dragovich*, 297 F.3d 201, 209 (3d Cir. 2002) (quoting 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1489 (3d ed.)). There is prudent efficiency and economy for doing so. "Procedurally, . . . the appropriate manner to dispose of this issue is to consider the motions together and determine what

---

[2] A motion for reconsideration has also been filed in a related case brought by another former franchisee involving similar claims where the Court had also granted 7-Eleven's motion for summary judgment. *See Chong et al. v. 7-Eleven, Inc.*, Civ. No. 18-1542. A separate memorandum and order will issue in *Chong*.

outcome is permitted by consideration of the Rule 15(a) factors." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011). Although Rule 15 instructs that a court shall grant leave to amend freely when justice so requires, "the liberality of the rule is no longer applicable once judgment has been entered." *Ahmed*, 297 F.3d at 207–08.; *see also Stanley v. Int'l Bhd. of Elec. Workers, AFL-CIO CLC*, 207 F. App'x 185, 190 (3d Cir. 2006) ("However, after final judgment, leave to amend will be granted only sparingly, and will be the 'long-odds exception.'") (quoting *Werner v. Werner*, 267 F.3d 288, 296 (3d Cir. 2001)). Again, matters of efficiency and economy for the litigants and the Court make this a sensible approach.

"A district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith, or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005). Under this standard, the party opposing the amendment has the burden of showing "prejudice, bad faith, undue delay, or futility." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 700 (E.D. Pa. 2007).

"Delay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008) (citing *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001)). Accordingly, a court's assessment of undue delay may properly focus on the plaintiff's reasons for not seeking leave to amend sooner balanced against the burden of delay on the court. *Id.*

An amendment is futile when the amended claims would be properly dismissed. *See Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) ("'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted.") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)). "In assessing 'futility,' the District Court

4

applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1434.

In evaluating the sufficiency of a complaint, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The Court must "accept all allegations as true." *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir. 1994); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating that courts must "assum[e] that all the allegations in the complaint are true (even if doubtful in fact)"). A court must also accept as true all reasonable inferences emanating from the allegations, and view those facts and inferences in the light most favorable to the nonmoving party. *See Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989); *see also Revell v. Port Auth.*, 598 F.3d 128, 134 (3d Cir. 2010).

That admonition does not demand that the Court ignore or discount reality. The Court "need not accept as true unsupported conclusions and unwarranted inferences," *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 183-84 (3d Cir. 2000) (citations and internal quotation marks omitted), and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions" (citations omitted)).

## Discussion

Mr. Takiedine requests leave to amend his complaint to include a claim for breach of Section 15(c) of the Franchise Agreements. Specifically, the proposed second amended complaint

alleges: "Defendant has forced Plaintiff to purchase its proprietary products and offer it for sale that do not sell well, and are not included in the list of proprietary products that Plaintiff is required to sell under Section 15(c) of the Franchise Agreements, thereby causing Plaintiff damages." Proposed Second Am. Compl. ¶ 57.

Mr. Takiedine argues that Rule 15 directs the liberal amendment of pleadings and favors permitting him to amend the complaint. He asserts that prejudice to the non-moving party is the touchstone in determining whether to permit an amendment, and here, he argues, 7-Eleven will not be prejudiced because 7-Eleven was already on notice of his claim for a breach of Section 15(c), as demonstrated by 7-Eleven conducting discovery on that issue.

7-Eleven opposes Mr. Takiedine amending the complaint now after summary judgment has been entered. The company contends that the liberality of Rule 15 no longer applies now that judgment has been entered, that Mr. Takiedine has unduly delayed seeking leave to amend, and that a second amendment would be futile. As explained below, the Court agrees with 7-Eleven's analysis.

### I. Mr. Takiedine's Motion for Leave to Amend is the Product of Undue Delay

Mr. Takiedine has had repeated opportunities to make any claim under Section 15(c) he believes he has known to 7-Eleven and the Court. In granting 7-Eleven's motion to dismiss Mr. Takiedine's original complaint, the Court granted Mr. Takiedine the opportunity to file an amended complaint "attaching the franchise agreements and *highlighting the specific terms alleged to have been breached.*" June 27, 2018 Mem. 12 (Doc. No. 23) (emphasis added). Mr. Takiedine did not specify Section 15(c) in his amended complaint.

At the oral argument on 7-Eleven's motions to dismiss the amended complaint and to stay arbitrable claims, the Court asked Plaintiff's counsel to identify what provision or provisions of the Franchise Agreement provided the basis for Mr. Takiedine's claim that the requirement to carry

6

"7-Select" products fell outside of the umbrella of arbitration. Plaintiff's counsel responded, "Section 15(b), Your Honor." Dec. 18, 2018 Oral Arg. Tr. 36:15. Later, Plaintiff's counsel also listed the terms of the Franchise Agreement he believed the amended complaint alleged 7-Eleven had breached: "Now, we believe there is a breach of contract claim here. . . . I set forth the specific terms of the contract. In addition to 1(a)(2), 1(c)(2), 15(b), *possibly 15(c)*, we also have the one about maintenance and we have other ones that we've taken discovery on that were pled and notified and taken discovery on . . . ." *Id.* at 48:4–12 (emphasis added). No other reference to or discussion of Section 15(c) occurred.

In ruling on 7-Eleven's motions, the Court concluded that although Mr. Takiedine's breach of contract claim made up only one count of the amended complaint, it could be broken down into seven separate claims of breach: (1) merchandise audits; (2) advertising expenditures; (3) charges Mr. Takiedine had to pay if he did not buy enough products from recommended vendors; (4) maintenance requests; (5) failure to treat Mr. Takiedine as an independent contractor; (6) failure to provide Mr. Takiedine notice of increased credit card fees; and (7) 7-Eleven's failure to secure the lowest prices for franchisees from its vendors—including a related claim that manufacturers and vendors who sold 7-Eleven's proprietary products to franchisees did not provide a return or sales credit in the event these products remained unsold. The Court dismissed breach of contract claims 1, 2, and 3 and stayed claim 7 for arbitration. Claims 4, 5, and 6 were the only breach of contract claims to survive.

The Court cited the provisions of the Franchise Agreements associated with each claim. Claim 4, maintenance requests, arose from Section 20(d) of the Franchise Agreements. Claim 5, failure to treat Mr. Takiedine as an independent contractor, arose from Section 2. And claim 6, failure to provide Mr. Takiedine notice of increased credit card fees, arose from Section 7 of the Credit Card Amendment.

7

At the time the Court issued its decision, it should and would have been apparent to Mr. Takiedine that there was no surviving independent breach of contract claim arising out of Section 15 generally or Section 15(c) specifically. Mr. Takiedine's assertion that the Court never barred claims related to Section 15(c) in ruling on the motion to dismiss the amended complaint misses the point: the Court did not dismiss any claim arising from Section 15(c) because no such claim existed. Indeed, the Court trusts that it would have been most unsettling to Mr. Takiedine if an entire claim at issue went unaddressed in the Court's analysis of 7-Eleven's motion to dismiss the amended complaint, to the point that such an occurrence would have inspired some action or reaction. Yet Mr. Takiedine did not alert the Court to any alleged oversight or seek leave at any point to amend his complaint to include a claim for breach of contract pursuant to Section 15(c) of the Franchise Agreements.

Nonetheless, Mr. Takiedine now claims that 7-Eleven has been on notice of a claim against it under Section 15(c). He argues that a large part of discovery and the damages set forth in his expert's report[3] relate to 7-Eleven's alleged breach of Section 15 by forcing him to sell products he did not want to sell. However, it is perfectly logical that discovery has been conducted and damages collected on some matters related to Section 15 because Mr. Takiedine has repeatedly relied on Section 15 generally as a tool to demonstrate that 7-Eleven allegedly controlled the manner and means of his stores, in turn failing to treat him as an independent contractor and breaching Section 2. That does not mean that the discovery or damages relate directly to a breach of Section 15.

---

[3] Mr. Takiedine asserts that 7-Eleven's motion to bar his expert's report was never ruled on. This is incorrect. Although the merits of the motion were never reached, the Court deemed the motion moot in the order granting 7-Eleven's motion for summary judgment. *See* Mar. 5, 2020 Order (Doc. No. 116).

Indeed, Mr. Takiedine himself has represented that his "damages, as calculated in Plaintiff's expert report, directly relate[] to Defendant's breaches of Plaintiff's independent contractor status," such as "when Plaintiff is forced to order merchandise he did not want." Pl.'s Suppl. Br. in Opp'n 4 (Doc. No. 111); *see also* O'Brien Dep. 18:10–16 ("Q. Would you agree with me that [] the Takiedine report that you prepared, is intended to address Mr. Takiedine's claims of harm arising from a contention that the independent contractor provision in the franchise agreement was breached? A. Yes."). Mr. Takiedine has also explained:

> Defendant argues that Section 15 of the Agreement were not plead in the Amended Complaint. Clearly Defendant fails to understand that Section 15 is cited in Plaintiff's Opposition to Defendant's Motion for Summary Judgment to refute Defendant's misleading summary judgment argument that "Plaintiff is attempting to transform the parties' relationship from that of a traditional franchisor and franchisee." As Defendant is fully aware, Plaintiff cannot be attempting to transform the parties' franchise relationship because he is simply asserting the rights and freedoms granted to Plaintiff in Section 15 of the Franchise Agreement that Defendant itself drafted.
>
> Additionally, Section 15 of the Franchise Agreement is pertinent because it establishes that Defendant undertook to treat the franchise as an independent contractor, and provides context for the interpretation of Section 2 titled "Independent Contractor."

Pl.'s Suppl. Br. in Opp'n 2–3 (Doc. No. 111).

Try as Mr. Takiedine might to cast his claims in a new light, his arguments that a breach of contract claim under Section 15(c) has always been a part of this case is belied by the procedural history and record of this case. To the extent that Mr. Takiedine felt such a claim was indispensable to his case, he indisputably had ample prior opportunity to seek leave to amend his complaint. So, either such a claim has always been known to the defendant, and it should have been articulated already, or it is a brand new theory that is being touted at the very end of the case when to do so would represent a prejudice to the defense. Either way, Mr. Takiedine as a difficult, indeed insurmountable, hurdle.

The Court has been clear since the outset of this case that Mr. Takiedine needed to direct 7-Eleven and the Court to the specific provisions of the Franchise Agreements he alleged 7-Eleven had breached. "Thus, when [Mr. Takiedine] filed [his] First Amended Complaint, one would reasonably expect that [he] was articulating [his] claims in the most effective way that [he] could . . . ." *Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640 (E.D. Pa. 2009) (citing *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 74 (3d Cir. 1994)), *aff'd*, 377 F. App'x 150 (3d Cir. 2010). Yet he did not reference Section 15(c) in his first amended complaint, and at the oral argument on the motion to dismiss the same, Plaintiff's counsel stated only that the amended complaint *possibly* included a breach of Section 15(c). There was no further mention of Section 15(c). Even when the Court issued its decision on 7-Eleven's motions to dismiss the amended complaint and stay arbitrable claims, making it apparent that the Court read the amended complaint to not include any breach of contract claims arising out of Section 15(c), Mr. Takiedine did not seek leave to amend the complaint to include such a claim. Instead, throughout the remainder of the litigation, Mr. Takiedine continued to rely on Section 15 only to support and contextualize his independent contractor claim under Section 2.

The Court will not allow Mr. Takiedine now, after summary judgment has been granted, to have a "'do-over' to assert new legal theories and permutations of [his] prior claims that [he] could have asserted much earlier." *Goldfish Shipping*, 623 F. Supp. 2d at 641. The fact that Mr. Takiedine selected a theory of liability that did not win the day does not entitle him to try again *seriatim*. Indeed, if Mr. Takiedine "had viable, alternative theories of recovery in this case, [he] was obligated to present those theories to the Court [] in the First Amended Complaint" or in his briefing related to the multiple motions to dismiss, the motion to stay arbitrable claims, or the motion for summary judgment. *Id.* He should not have kept Section 15(c) on the bench if he

10

believed it was the star quarterback he proclaims. The Court and the defense have invested considerable time and resources both ascertaining Mr. Takiedine's claims and evaluating their viability. Mr. Takiedine appears to offer no explanation for his delay in seeking leave to amend beyond the fact that he did not believe it previously was necessary to do so. It was, and that position cannot win the day. *See id.* (denying leave to amend where plaintiff did not claim to have additional facts or a change in law permitting "new, more viable theories of recovery" but rather "seem[ed] to argue that it simply did not think, earlier in the litigation, that it was necessary to advance its current theories of recovery or to allege the new facts that it sets forth, because it did not realize that the old theories were infirm or that the additional facts were important"). Any other conclusion would run contrary to the fundamental principles of finality and judicial economy.

For these reasons, the Court finds that this record demonstrates undue delay on Mr. Takiedine's part.

## II. Mr. Takiedine's Motion for Leave to Amend is Futile

In addition to Mr. Takiedine's motion being the product of undue delay, permitting such an amendment would be futile.

When 7-Eleven previously moved to stay Mr. Takiedine's arbitrable claims, one claim at issue was the allegation that 7-Eleven had required Mr. Takiedine to purchase and carry certain proprietary products, including "7-Select" items, and that he could not return them if they went unsold, resulting in a loss in the form of a write-off. As the Court explained then:

> Mr. Takiedine's proprietary products claim can be boiled down to this: he cannot return 7-Eleven's proprietary products to the vendors or manufactures when the products remain unsold like he can with other products, and he instead must take a loss. This is, in the final analysis, a vendor negotiating practices issue, as Mr. Takiedine is contending that return rights should exist—i.e., should have been negotiated by 7-Eleven with the vendors and manufacturers of the products at issue.

11

Feb. 22, 2019 Mem. 20 (Doc. No. 70).

At the time, Mr. Takiedine argued that this claim fell outside of the arbitration provision. Because Section 15(j) was the provision governed by arbitration, Mr. Takiedine asserted, in part, that his claims concerning proprietary products arose from Section 15(b), not 15(j), and should not be sent to arbitration. The Court rejected his argument:

> Section 15(b) states that Mr. Takiedine agrees to "carry at the Store all Categories of Inventory that we [7-Eleven] specify." It further provides that Mr. Takiedine "may delete any Category if such Category does not meet sales goals that we [7-Eleven] establish, provided that you [Mr. Takiedine] obtain our prior written consent, which consent will not be unreasonably withheld." However, this provision is not referenced anywhere in Mr. Takiedine's amended complaint, and he does not allege that he asked 7-Eleven for permission to stop selling any products or that 7-Eleven unreasonably rejected such a request. Mr. Takiedine cannot now re-cast his claim in an obvious effort to avoid arbitration.

Feb. 22, 2019 Mem. 22 (Doc. No. 70).

The Court recognizes that Mr. Takiedine has now asked to amend his complaint to include such a reference, this time to Section 15(c) rather than 15(b). Section 15(c) required Mr. Takiedine to maintain in his stores a reasonable quantity of proprietary products as listed in Exhibit G to the Franchise Agreements or as otherwise specified by 7-Eleven in writing. Section 15(c) permitted 7-Eleven to change the proprietary products "from time to time upon reasonable notice (delivered in electronic or other form) . . . by unilaterally modifying Exhibit G or by otherwise providing . . . written notice of the change."

Mr. Takiedine argues that his new claim under Section 15(c) has nothing to do with write-offs related to vendor practices and therefore does not fall under the umbrella of arbitrable claims. He states that 7-Eleven violated Section 15(c) by requiring him to sell proprietary products that were not listed in Exhibit G, and that breach caused him damages in the form of profits through costs of goods sold. Mr. Takiedine argues that even if there is some overlap in the damages recoverable from his breach of the independent contractor provision and the vendor negotiating

12

practices issue, the overlap does not preclude a Section 15(c) claim moving forward because "courts routinely hold that, although damages recoverable from one damage theory may overlap with damages from another, parties may proceed on both theories, with courts/arbitrations tasked to avoid double recoveries." Pl.'s Reply 5–6 (Doc. No. 124) (citations omitted).

First, Mr. Takiedine may have shifted the framing of his claim, but the underlying factual allegations are the same: 7-Eleven allegedly forced Mr. Takiedine to carry proprietary products that he did not want and it caused him damages. Mr. Takiedine asserts that double recovery is not an issue here because an arbitration has not yet been filed on the issue of write-offs due to the fact that "it is a convoluted process of having Plaintiff apply to a franchisee committee to be formed by Defendant, and *that* committee then decides whether or not to file an arbitration with the American Arbitration Association." Pl.'s Reply at 6 n.2 (Doc. No. 124). That arbitration has not begun does not change the fact that the Court ordered Mr. Takiedine's claims relating to proprietary products, including "7-Select" items, to arbitration. As the Court has stated, "Mr. Takiedine cannot now re-cast his claim in an obvious effort to avoid arbitration." Feb. 22, 2019 Mem. 22 (Doc. No. 70).

Second, even if the damages could be said to be distinct, Mr. Takiedine's claim under Section 15(c) is nonetheless futile. Section 15(c) states in plain language that 7-Eleven may change the proprietary products without modifying Exhibit G (Exhibit G being a list of required proprietary products) as long as it provides reasonable written notice of the change. Mr. Takiedine does not claim that 7-Eleven did not provide such notice. Rather, he continues to rely on the absence of "7-Select" from Exhibit G, and he argues that the number of proprietary products he

was forced to sell greatly increased beyond what was contemplated at the time the Franchise Agreements were signed.[4]

Yet Mr. Takiedine himself acknowledges that 7-Eleven had the power to add to the list of proprietary products. *See* Am. Compl. ¶ 21 ("Under the terms of the Franchise Agreements, Defendant reserved the right to add or remove proprietary products to the list of proprietary products that Plaintiff must sell in the store."); June 7, 2018 Takiedine Dep. 166:21–24 ("Q: Are you claiming 7-Eleven doesn't have a right to add products to the list of proprietary products? A: They have the right to add anything they want. I need to have the right not to sell it."). Although Mr. Takiedine demands the right not to sell the "7-Select" line, whether he can successfully make such a refusal is governed by the contract he signed. Here, Section 15(c) stated that "[e]ffective beginning thirty (30) days after we [7-Eleven] notify you [Mr. Takiedine] of the change, you [Mr. Takiedine] agree to carry and offer for sale the new or modified Proprietary Products." And Section 15(b) required Mr. Takiedine "to comply with all our [7-Eleven] standards and specifications for all Inventory, including Proprietary Products and other products and services carried, used or offered for sale at the Store."

At this stage of the litigation, Mr. Takiedine is no longer entitled to Rule 15's liberal policy favoring amendments, and the proposed second amended complaint does not raise a viable claim

---

[4] Accordingly, because an item could be added to the list of proprietary products without requiring a modification of Exhibit G, Mr. Takiedine's contention that the "7-Select" product line was not listed as proprietary under Exhibit G and his reliance on the testimony of the former Vice President of the Penn/Jersey Zone for 7-Eleven, Eric DeFrancisco, admitting the same do not demonstrate a violation of Section 15(c).

Furthermore, although Mr. DeFrancisco testified at one point in his deposition that "7-Select" is not a proprietary product, that testimony is not as absolute as it may appear at first blush. Mr. DeFrancisco had been provided with a copy of Exhibit G from 2004 and asked whether "7-Select" was considered a proprietary product. He answered no "[b]ecause it's not listed." DeFrancisco Dep. 54:14–17. However, Mr. DeFrancisco explained that 7-Eleven "did not have a private brands program or 7-Select program in 2004." *Id.* at 56:24–57:2. When asked if "currently, the 7-Select brand, the products under that brand . . . are 7-Eleven proprietary products," Mr. DeFrancisco responded, "Yes, they are." *Id.* at 56:12–18.

under Section 15(c), nor does it cure the deficiencies that entitled 7-Eleven to summary judgment. Accordingly, the Court concludes that permitting an amendment would be futile.

### III. Mr. Takiedine's Motion for Reconsideration is Meritless

Recognizing that the appropriate manner to dispose of a post-judgment motion for reconsideration and motion to amend is to consider the motions together and determine what outcome is permitted by consideration of the Rule 15(a) factors, out of an abundance of caution, the Court will briefly address and dispose of the arguments raised in Mr. Takiedine's motion for reconsideration.

#### A. Categories of Inventory

Mr. Takiedine asserts that the Court based its summary judgment decision in part on the belief that "7-Select" was a "Category of Inventory" that he was required to sell under Section 15(b) of the Franchise Agreements. Mr. Takiedine argues that this conclusion was in error because "7-Select" is not a Category of Inventory, and therefore Section 15(b) does not justify 7-Eleven requiring Mr. Takiedine to carry "7-Select."

In the first place, the Court's summary judgment decision turned on Section 2, not Section 15. The Court plainly held that Section 2 did not impose a duty on 7-Eleven, at which point the fate of Mr. Takiedine's independent contractor claim was sealed. However, in executing a comprehensive analysis, the Court then explored whether "*even if* Section 2 did impose some duties on 7-Eleven," Section 2 could "be invoked to prevent 7-Eleven from [] requiring Mr. Takiedine to stock and sell certain products." Mar. 5, 2020 Mem. 6 (Doc. No. 115) (emphasis added). The Court concluded it could not. Accordingly, even if Mr. Takiedine's arguments that the Court erred in its merchandising evaluation had merit, reconsideration would not be warranted because the merchandising evaluation was inconsequential to the Court's central determination that Section 2 did not impose any duties on 7-Eleven. *See Projects Mgmt. Co. v. DynCorp Int'l,*

*LLC*, 17 F. Supp. 3d 539, 544 (E.D. Va.) ("[N]either of these factual quibbles raised by PMC can serve as a basis for reconsideration of the summary judgment, as neither is material to the disposition of the summary judgment motion."), *aff'd*, 584 F. App'x 121 (4th Cir. 2014).

Even so, Mr. Takiedine's arguments do not have merit. In granting 7-Eleven's motion for summary judgment on Mr. Takiedine's independent contractor claim arising under Section 2, the Court stated in a footnote:

> Mr. Takiedine notes that the "7-Select" product line was not listed as proprietary under Exhibit G and cites the testimony of the former Vice President of the Penn/Jersey Zone for 7-Eleven, Eric DeFrancisco, who admitted as much. *See* DeFrancisco Dep. 54:12-14. Mr. Takiedine claims, therefore, that 7-Eleven cannot hide behind Section 15(c), and that its pressure on Mr. Takiedine to sell "7-Select" products violated the independent contractor provision. However, Mr. Takiedine ignores Section 15(b), in which he agreed to "carry at the Store all Categories of Inventory that [7-Eleven] specif[ied]." Franchise Agreements § 15(b). This provision is not limited to "proprietary products." Thus, Mr. Takiedine's focus on the proprietary products designation is misplaced.

Mar. 5, 2020 Mem. 7 n.6 (Doc. No. 115).

Despite Mr. Takiedine's contentions to the contrary, the Court did not hold that "7-Select" was a Category of Inventory. Rather, the Court's reference to Section 15(b) served to illustrate the considerable discretion contractually held by 7-Eleven. Indeed, beyond the discretion to specify Categories of Inventory, Section 15(b) also required Mr. Takiedine to "agree to comply with *all* our [7-Eleven] standards and specifications for *all* Inventory, *including Proprietary Products and other products and services carried, used or offered for sale* at the Store." Franchise Agreements § 15(b) (emphasis added).

Mr. Takiedine also neglects the reference to Section 15(c) in the Court's decision, which further emphasized 7-Eleven's discretion:

> Mr. Takiedine highlights that only 11 products were listed as proprietary products in the Franchise Agreements and suggests that 7-Eleven's decision to add more proprietary products is a violation of the independent contractor provision. In support of this argument, Mr. Takiedine claims that 7-Eleven makes a larger profit

> when its franchisees sell 7-Eleven branded products. *However, Section 15(c) explicitly grants 7-Eleven the right to unilaterally modify the proprietary products list, and nothing prevents 7-Eleven from invoking its rights under its contracts to make a larger profit.* There is no claim by Mr. Takiedine invoking the "reasonable notice" language.

Mar. 5, 2020 Mem. 6 n.4 (Doc. No. 115) (emphasis added).

No matter which way Mr. Takiedine tries to manipulate the Court's words, the Court's reference to Section 15(b), in a footnote, after ruling that Section 2 did not impose any duties on 7-Eleven, was inconsequential to the outcome and he is not entitled to reconsideration on this basis.

### B.   Sufficient Evidence

Mr. Takiedine also claims that the evidence weighs in his favor and a reasonable jury could find that 7-Eleven breached the Franchise Agreement by forcing Mr. Takiedine to sell "7-Select" products.

None of Mr. Takiedine's arguments attack the Court's central holding that Section 2 did not impose any duties on 7-Eleven. Therefore, Mr. Takiedine's contentions and evidence related to merchandising are, simply, immaterial to the Court's ultimate decision and cannot be grounds for reconsideration. Nonetheless, in the hopes that continued discussion may provide some newfound elucidation, the Court has explained that Mr. Takiedine admitted Section 15(c) granted 7-Eleven the discretion to add or remove proprietary products as long as it provided him with reasonable written notice. Mr. Takiedine does not allege that 7-Eleven failed to provide reasonable written notice that he must carry "7-Select" products. Rather, he invokes Exhibit G and argues that "7-Select" products were not listed. But under Section 15(c), Exhibit G is not Mr. Takiedine's life preserver. Mr. Takiedine agreed "to maintain in the Store at all times a Reasonable and Representative Quantity of all Proprietary Products listed in Exhibit G *or otherwise in writing,*" Franchise Agreements § 15(c) (emphasis added), and Section 15(b) required Mr. Takiedine "to comply with all our [7-Eleven] standards and specifications for all Inventory, including Proprietary

17

Products and other products and services carried, used or offered for sale at the Store." Accordingly, that "7-Select" was not listed on Exhibit G does not create a dispute of *material* fact where a product need not have been listed to be considered proprietary under the terms of the Franchise Agreements.[5]

Mr. Takiedine's arguments regarding the sufficiency of the evidence, which are largely recycled from his summary judgment briefing, do not entitle him to reconsideration.

### C. Section 15

Finally, Mr. Takiedine argues that the Court erred by stating that "Mr. Takiedine did not advance any breach of contract claims based on Section 15(b) in his Amended Complaint," Mar. 5, 2020 Mem. 6 n.5 (Doc. No. 115), because Section 15 has always been an issue in this case and justice requires that a Section 15 claim proceed to trial.

This contention is revisionistic. As the Court has outlined in detail, Mr. Takiedine's amended complaint did not state a claim for a breach of contract arising out of Section 15(b). Nor is the summary judgment opinion the first time the Court has issued a decision alerting Mr. Takiedine to the absence of a claim under Section 15(b). In granting 7-Eleven's earlier motion to stay arbitrable claims, the Court rejected Mr. Takiedine's reliance on Section 15(b), stating that "this provision is not referenced anywhere in Mr. Takiedine's amended complaint" and "Mr. Takiedine cannot now re-cast his claim in an obvious effort to avoid arbitration." Mar. 5, 2020

---

[5] In one of his arguments, Mr. Takiedine asserts that Mr. DeFrancisco "conceded that, if a field consultant were falsely telling franchisees that they have to sell Defendant's proprietary products, that would be a failure to allow franchisees to manage their own stores as they see fit." Mot. for Recons. 13 (Doc. No. 118). Mr. DeFrancisco's opinion is essentially a legal conclusion as to whether 7-Eleven requiring Mr. Takiedine to carry "7-Select" would breach the Franchise Agreements by failing to treat Mr. Takiedine as an independent contractor. Not only was Mr. DeFrancisco not a corporate designee, and accordingly his opinion does not bind 7-Eleven, but witness testimony that crosses over into legal opinion is inadmissible. Furthermore, and dispositive of the issue, given his position, Mr. DeFrancisco's subjective beliefs cannot override the objective, express terms of the Franchise Agreements.

Mem. 22. Section 15(c)'s presence in the history of this case, which the Court has already explained and need not repeat, is even more tenuous, and at most was relied upon only to support Mr. Takiedine's independent contractor claims under Section 2. Accordingly, Section 15 does not entitle Mr. Takiedine to reconsideration.

## CONCLUSION

For the foregoing reasons, the Court denies the motion for reconsideration and the motion for leave to file a second amended complaint. An appropriate order follows.

BY THE COURT:

/s/ Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE